JUDGE PAULEY

14 CV 0899

**PELTON & ASSOCIATES PC**
Brent E. Pelton
Alison G. Lobban
Taylor B. Graham
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700

RECEIVED
FEB 11 2014
U.S.D.C. S.D. N.Y.
CASHIERS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LYNN MAHALICK, ANTHONY SCARSELLA and STEPHAN ORTIZ, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>-against-<br><br>PQ NEW YORK, INC., PQ LICENSING S.A., PQ 933 BROADWAY, PQ LINCOLN SQUARE, INC., PQ UN, INC., PQ SIXTH AVE, INC., PQ 550 HUDSON, INC., PQ WEST 72nd, INC. and JOHN DOES #1-47 d/b/a/ LE PAIN QUOTIDIEN, Jointly and Severally,<br><br>Defendants. | **CLASS & COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs Lynn Mahalick, Anthony Scarsella and Stephan Ortiz ("Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge to themselves, and upon information and belief as to other matters, allege as follows:

## NATURE OF THE ACTION

1.     Plaintiffs are former servers at Defendants' Le Pain Quotidien restaurants ("Le Pain Quotidien" or the "Company") throughout New York City.  Plaintiffs bring this action on behalf of themselves and all similarly situated current and former Le Pain Quotidien servers in the United States to recover unpaid minimum and overtime wages owed to them pursuant to both

1

the FLSA, 29 U.S.C. §§ 201 *et seq.* and specifically, the collective action provision of 29 U.S.C. § 216(b), to remedy the violations of the wage-and-hour provisions of the FLSA by Defendants that have deprived Plaintiffs and other similarly situated employees of their lawfully earned wages.

2.     Plaintiffs also bring this action on behalf of themselves and all similarly situated current and former Le Pain Quotidien servers in New York State pursuant to Federal Rule of Civil Procedure 23 ("FRCP 23") to remedy violations of the New York Labor Law ("NYLL"), Article 6 §§ 190 *et seq.* and Article 19, §§ 650 *et seq.* and the supporting New York State Department of Labor regulations.

3.     The Le Pain Quotidien restaurants are owned and operated by Defendants PQ New York, Inc., PQ Licensing S.A., PQ 933 Broadway, PQ UN, Inc., PQ Sixth Avenue, Inc., PQ 550 Hudson, Inc., PQ West 72nd Inc., and John Does #1-47 (collectively "Defendants"). Le Pain Quotidien's headquarters is located in New York City at 434 Broadway, New York, NY 10013.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

6.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiffs:**

7.      Plaintiffs Lynn Mahalick ("Mahalick"), Stephan Ortiz ("Ortiz") and Anthony Scarsella ("Scarsella" and, collectively with Mahalick and Ortiz, the "Plaintiffs") were, at relevant times, adult individuals residing in New York City, Counties of New York and Brooklyn.

8.      Throughout the relevant time period, Plaintiffs performed wait staff services for Defendants at their restaurants, located at: 937 2nd Avenue, New York, NY 10022; 1271 Sixth Avenue, New York, NY 10020; 931 Broadway, New York, NY 10010; 60 West 65th Street, New York, NY 10023; 550 Hudson Street, New York, NY 10014; and 50 West 72nd Street, New York, NY 10023.

9.      Plaintiffs are covered employees within the meaning of the FLSA and NYLL.

10.      Plaintiffs consent in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b), and their written consent forms are attached hereto and incorporated by reference.

**Defendants:**

11.      Defendants jointly employed Plaintiffs and similarly situated employees at all times relevant. Each Defendant had substantial control over Plaintiffs' working conditions, and over the unlawful policies and practices alleged herein.

12.      Upon information and belief, Defendants are part of a single integrated enterprise that jointly employed Plaintiffs and similarly situated employees at all times relevant. At all relevant times, Defendants owned and/or operated the Le Pain Quotidien enterprise during the relevant period.

13.      Upon information and belief, Defendants' operations are interrelated and unified.

14.      Upon information and belief, during all relevant times, the Le Pain Quotidien

restaurants shared a common management and were centrally controlled and/or owned by Defendants.

15.     Upon Information and belief, PQ New York, Inc. is an active Foreign Business Corporation doing business as "Le Pain Quotidien," with its principle place of business at 434 Broadway, New York, NY 10013.

16.     Upon information and belief, PQ Licensing SA is the parent corporation of PQ New York, Inc.

17.     Upon information and belief, PQ UN, Inc. ("United Nations") is an active New York Business Corporation doing business as "Le Pain Quotidien," with its principle place of business at 937 2nd Avenue, New York, NY 10022.  Defendants jointly operate the Le Pain Quotidien located at 937 2nd Avenue, New York, NY through PQ UN, Inc.

18.     Upon information and belief, PQ Lincoln Square, Inc. ("Lincoln Center") is an active New York Corporation doing business as "Le Pain Quotidien," with its principle place of business at 60 West 65th Street, New York, NY 10023.  Defendants jointly operate the Le Pain Quotidien located at 60 West 65th Street through PQ Lincoln Square, Inc.

19.     Upon information and belief, PQ 933 Broadway, Inc. ("Flatiron") is an active New York Corporation doing business as "Le Pain Quotidien," with its principle place of business at 931 Broadway, New York, NY 10010.  Defendants jointly operate the Le Pain Quotidien located at 931 Broadway, New York, NY 10010 through PQ 933 Broadway, Inc.

20.     Upon information and belief, PQ Sixth Avenue, Inc. ("Rockefeller Center") is an active New York Corporation doing business as "Le Pain Quotidien," with its principle place of business at 1271 Sixth Avenue, New York, NY 10020.  Defendants jointly operate the Le Pain Quotidien located at 1271 Sixth Avenue, New York, NY 10020 through PQ Sixth Avenue, Inc.

21.    Upon information and belief, PQ 550 Hudson, Inc. ("Hudson") is an active New York Corporation doing business as "Le Pain Quotidien," with its principle place of business at 550 Hudson Street, New York, NY 10014.  Defendants jointly operate the Le Pain Quotidien located at 550 Hudson Street through PQ 550 Hudson, Inc.

22.    Upon information and belief, PQ West 72nd, Inc. ("Central Park West") is an active Foreign Business Corporation doing business as "Le Pain Quotidien," with its principle place of business at 50 West 72nd Street New York, NY 10023.  Defendants jointly operate the Le Pain Quotidien located at 50 West 72nd Street through PQ West 72nd, Inc.

23.    Upon information and belief, John Does #1-47 d/b/a Le Pain Quotidien represent other corporate entities that operate Le Pain Quotidien restaurants in the United States.  PQ New York, Inc., PQ Licensing SA, United Nations, Lincoln Center, Flatiron, Rockefeller Center, Hudson, Central Park West and John Does #1-47 d/b/a Le Pain Quotidien are hereinafter collectively referred to as the "Defendants."

24.    The Defendants operate together as a single business enterprise (hereinafter referred to as the "Le Pain Quotidien Enterprise") consisting of approximately fifty-three (53) Le Pain Quotidien locations throughout the United States.

25.    At all relevant times, the Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA.  The Defendants operate a chain of restaurants under the trade name "Le Pain Quotidien."

26.    The chain of restaurants under the trade name "Le Pain Quotidien" are operated and marketed by Defendants as a common enterprise.  Each of the above businesses is advertised jointly at Defendants' website located at www.lepainquotidien.com.  Employees are freely interchangeable, the various business operations are marketed as one entity, and all employees

are paid by the same payroll methods.

27.     At all relevant times, the Defendants were a covered employer within the meaning of the FLSA and the NYLL, and, at all relevant times, employed Plaintiffs and similarly situated employees.

28.     At all relevant times, the Defendants maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including timekeeping, payroll, and other employment practices that applied to them.

29.     The Defendants apply the same employment policies, practices, and procedures to all current and formers servers at the Le Pain Quotidien restaurants, including policies, practices, and procedures with respect to the payment of minimum wage, overtime compensation, time shaving, wage statements, wage notices and failing to reimburse servers for the cost of maintaining their uniforms.

30.     At all relevant times, the Defendants have had the power to transfer the assets or liabilities of the Le Pain Quotidien restaurants.

31.     At all relevant times, the Defendants have had the power to declare bankruptcy on behalf of the Le Pain Quotidien restaurants.

32.     At all relevant times, the Defendants have had the power to enter into contracts on behalf of the Le Pain Quotidien restaurants.

33.     Upon information and belief, at all relevant times, the Defendants' annual gross volume of sales made or business done was not less than $500,000.

34.     At all relevant times, the work performed by Plaintiffs was directly essential to the business operated by Defendants.

## COLLECTIVE ACTION ALLEGATIONS

35.     Pursuant to 29 U.S.C. §§ 206 & 207 and 29 U.S.C. § 216(b), Plaintiffs bring their

First and Second Causes of Action as a collective action under the FLSA on behalf of themselves and all similarly situated servers employed by Defendants in the United States since February 7, 2011 and through the entry of judgment in this case (the "Collective Action Period") who elect to opt-in to this action ("the Collective Action Members").

36.     A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action Members are similarly situated, in that they have had substantially similar job requirements and pay provisions, and were all subjected to Defendants' illegal policy of failing to pay the proper minimum wage for all hours worked, not compensating them for all hours worked, and for failing to pay correct overtime premiums for work performed over forty (40) hours each week. As a result of this policy, Plaintiffs and the Collective Action Members did not receive the legally required minimum wages for all hours worked and in fact only received the "tipped" minimum wage when they were spending over twenty percent (20%) of their time performing non tip producing "sidework," were not properly informed of the provisions of subsection 203(m) of the FLSA, and did not receive the legally required overtime premium payments for all hours worked in excess of forty (40) per week.

37.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b). The FLSA Collective Action Members are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Action Members via first class mail to the last address known to Defendants.

38.     Consistent with Defendants' policy, pattern and/or practice, Plaintiffs and the Collective Action Members were not paid minimum wages for all hours worked and premium overtime compensation for all hours worked beyond forty (40) per workweek.

39.    All of the work that Plaintiffs and the Collective Action Members have performed has been assigned by Defendants, and/or Defendants have been aware of all the work that Plaintiffs and the Collective Action Members have performed.

40.    As part of its regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA with respect to Plaintiffs and the Collective Action Members. This policy and pattern or practice includes, but is not limited to: willfully failing to pay its employees, including Plaintiffs and the Collective Action Members, minimum wages for all hours worked and premium overtime wages for hours they worked in excess of forty (40) hours per workweek.

41.    Defendants' unlawful conduct, as described in this Class and Collective Action Complaint, is pursuant to a corporate policy or practice of minimizing labor costs by unlawfully taking a tip credit against the minimum wage rate paid to Plaintiffs and the Collective Action Members.

42.    Defendants are aware or should have been aware that federal law required them to pay Plaintiffs and the Collective Action Members minimum wage for all of the hours they worked.

43.    Defendants are aware or should have been aware that federal law required them to pay Plaintiffs and the Collective Action Members overtime premiums for hours worked in excess of forty (40) per workweek.

44.    Plaintiffs and the Collective Action Members perform or performed the same primary duties.

45.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

46.    Written consent forms for the following individuals are attached to this Class and

8

Collective Action Complaint: Lynn Mahalick; Stephen Ortiz; and Anthony Scarsella.

## CLASS ALLEGATIONS – NEW YORK LABOR LAW

47.     Pursuant to the NYLL, Plaintiffs bring their Third through Eighth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure ("FRCP 23") on behalf of themselves and all servers employed by Defendants within New York State (the "Class Members") at any time since February 7, 2008 and through the entry of judgment in this case (the "Class Period").

48.     The Class Members are readily ascertainable.  The number and identity of the Class Members are determinable from the records of Defendants.  The hours assigned and worked, the position held, and rates of pay for each Class Member are also determinable from Defendants' records.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants.  Notice can be provided by any means permissible under FRCP 23.

49.     The Class Members are so numerous that joinder of all members is impracticable.

50.     Although the precise number of Class Members is unknown to Plaintiffs, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

51.     Upon information and belief, there are well in excess of forty (40) Class Members.

52.     There are questions of law and fact common to the claims of Plaintiffs and the claims of the Class, including whether Defendants had a corporate policy of failing to pay the correct minimum wage for all hours worked, failing to pay the correct overtime wage for all hours worked and failing to reimburse Plaintiffs and the Class Members for certain business

expenses.

53.     The Third through Eighth Causes of Action are properly maintainable as a class action under Federal Rules of Civil Procedure 23(b)(3).  There are questions of law and fact common to the Class that predominate over any questions solely affecting the individual members of the class, including but not limited to:

a.   whether Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL;

b.   whether Defendants violated NYLL, Articles 6 and 19, and the supporting New York State Department of Labor regulations;

c.   whether Defendants failed and/or refused to pay Plaintiffs and the Class Members minimum wages for all of the hours they worked;

d.   whether Defendants correctly compensated Plaintiffs and the Class Members for hours worked in excess of forty (40) hours per workweek;

e.   whether Defendants failed to reimburse Plaintiffs and the Class Members for certain business expenses, including but not limited to, uniform maintenance;

f.   whether Defendants failed to keep true and accurate time and pay records for all hours worked by Plaintiffs and the Class Members, and other records required by the NYLL;

g.   whether Defendants failed to furnish Plaintiffs and the Class Members with statements of wages, hours worked, rates paid, gross wages, and the claimed tip allowance as required by the NYLL;

h.   whether Defendants failed to provide proper wage notice to Plaintiffs and the Class Members at the beginning of their employment and on February 1 of each

year as required by the NYLL;

i.  what are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Plaintiffs and Class Members properly;

j.  at what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiffs and the Class Members for their work;

k.  whether Defendants properly notified Plaintiffs and the Class Members of their hourly rate;

l.  whether Defendants properly provided notice to Plaintiffs and Class Members that Defendants were taking a tip credit;

m.  what proof of hours worked is sufficient where employers fail in their duty to maintain time records;

n.  whether Defendants caused Plaintiffs and Class Members to engage in non-tipped duties exceeding twenty percent (20%) of each workday;

o.  whether Defendants' policy of failure to pay workers was instituted willfully or with reckless disregard of the law; and

p.  whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' feees.

54.  A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.  The individual members of the class have no

interest or capacity to bring separate actions; Plaintiffs are unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

55.     The claims of Plaintiffs are typical of the claims of the Class Members they seek to represent.  Plaintiffs and all of the Class Members work, or have worked, for Defendants as servers at the Le Pain Quotidien restaurants in New York.  Plaintiffs and the Class Members enjoy the same statutory rights under the NYLL, including to be paid for all hours worked, to be paid overtime wages, and to be reimbursed for the cost of maintaining their uniforms.  Plaintiffs and the Class Members have all sustained similar types of damages as a result of Defendants' failure to comply with the NYLL.  Plaintiffs and the Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.

56.     Plaintiffs will fairly and adequately represent and protect the interests of the Class Members.  Plaintiffs understand that as class representatives, they assume a fiduciary responsibility to the class to represent its interests fairly and adequately.  Plaintiffs recognize that as class representatives, they must represent and consider the interests of the class just as they would represent and consider their own interests.  Plaintiffs understand that in decisions regarding the conduct of the litigation and its possible settlement, they must not favor their own interests over the class.  Plaintiffs understand that in order to provide adequate representation, they must be informed of the developments in litigation, cooperate with class counsel, and testify at deposition and/or trial.  Plaintiffs have retained counsel competent and experienced in complex class actions and employment litigation.  There is no conflict between Plaintiffs and the Class Members.

## STATEMENT OF FACTS

57.     Le Pain Quotidien has a global presence of more than one hundred and fifty (150) stores throughout the world, including fifty-three (53) stores in the United States in New York, Los Angeles, Washington, D.C., Connecticut and Philadelphia.  All of the Le Pain Quotidien restaurants are listed on the "PQUS Press Kit," available on the website www.lepainquotidien.com.

58.     According to the "PQUS Press Kit," Alan Coumont ("Coumont") "founded Le Pain Quotidien in Brussels in 1990 and currently serves as the company's Chief Creative Officer. In that role, he remains the driving force behind the brand's dedication to organic ingredients." According to the "PQUS Press Kit," Le Pain Quotidien serves "simple, elengant boulangerie faire...made with organic ingredients whenever possible."

59.     According to the "PQUS Press Kit," Vincent Herbert ("Herbert") "has served as the Chief Executive Officer of PQ Licensing S.A. since 2003.  In that capacity, he manages the company-owned operations in the United States, France and the United Kingdom and oversees the international franchise business." Pursuant to the Company's corporate filings with the New York State Department of State, Division of Corporations, Herbert is also the Chief Executive Officer of PQ New York, Inc., PQ Licensing SA, PQ 933 Broadway, PQ UN, Inc., PQ Sixth Avenue, Inc., PQ 550 Hudson, Inc., and PQ West 72nd Inc.

60.     Upon information and belief, Defendants applied the same employment policies, practices, and procedures to all servers at the Le Pain Quotidien restaurants throughout the United States.

61.     Plaintiff Mahalick worked at Le Pain Quotidien as a server from April 17, 2013 through December 22, 2013.  Specifically, Mahalick worked at Rockefeller Center from

approximately April 17, 2013 through April 23, 2013, Flatiron from approximately April 24, 2013 through May 31, 2013, Central Park West and Lincoln Center for most of the month of June 2013, Hudson on July 20, 2013 and primarily United Nations from approximately June 24, 2013 through December 22, 2013.

62.    Plaintiff Ortiz worked as a server at the United Nations location from approximately April 2013 to September 2013.

63.    Plaintiff Scarsella worked as a server at the United Nations location from approximately January 16, 2013 to November 19, 2013.

64.    At all relevant times, Plaintiffs and the Collective Action Members were employed by an entity engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 201 *et seq.*, and/or they were engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 201 *et seq*.

65.    At all relevant times, Plaintiffs and the Collective Action Members were or have been employees within the meaning of 29 U.S.C. §§ 201 *et seq*.

66.    Consistent with their policies and patterns or practices as described herein, Defendants harmed Plaintiffs, individually, as follows:

67.    At all times relevant, Defendants paid Plaintiffs and all similarly situated Class and Collective Action Memebers a reduced, tipped minimum wage rate. Defendants, however, did not satisfy the requirements under the Fair Labor Standards Act ("FLSA") or the New York Labor Law ("NYLL") by which they could take a tip credit towards the basic hourly rate paid to Plaintiffs, Class and Collective Action Members.

68.    In that regard, throughout Plaintiffs' employment, Defendants required Plaintiffs

to spend a substantial amount of time performing non-tip producing "side work," including, but not limited to: unstacking and setting up outdoor tables, chairs, umbrellas and wrought-iron gratings; slicing and preparing the bread; polishing silverware; washing the tables; preparing the bleach water; unloading the dishwasher; refilling the jam caddies and placing them on the tables; taking out the garbage; sweeping and mopping floors; cleaning and setting up tables; cleaning the baseboards; dusting the wine bottles; cleaning the computer screens; cleaning the cupboards; rewriting the specials on the chalk board; restocking napkins; checking and restocking toilet paper in the restrooms; and stacking and chaining together outdoor tables, chairs, umbrella stands and wrought-iron gratings.  As a result of this practice, Plaintiffs regularly spent in excess of twenty percent (20%) of their time at work engaged in non-tipped capacity.  During these periods, Defendants compensated Plaintiffs at the tipped minimum wage rate rather than the full hourly minimum wage rate.

69.    Defendants did not pay Plaintiffs the proper minimum wages or overtime wages for all of the time they were suffered or permitted to work each workweek.

70.    Defendants paid Plaintiffs using the tip credit minimum wage rate, rather than the full minimum wage rate.

71.    Defendants repeatedly suffered or permitted Plaintiffs to work over forty (40) hours per week, up to a maximum of approximately forty-eight (48) hours per week.  Defendants did not compensate Plaintiffs at the proper overtime rate for all of the hours they worked in excess of forty (40) per workweek.

72.    Defendants required Plaintiffs to wear certain uniforms consisting of a shirt with a "Le Pain Quotidien" logo on it, black pants, and black slip resistant shoes.  Despite the fact Plaintiffs typically worked five (5) days per week, Defendants only provided approximately two

(2) shirts and required Plaintiffs to purchase additional shirts. Furthermore, Defendants did not reimburse Plaintiffs the cost of laundering or otherwise maintaining their uniforms.

73.    Defendants did not provide Plaintiffs with proper wage statements.

74.    Defendants did not provide Plaintiffs with proper wage notices at the time of hire or on February 1 of each year.

**FIRST CLAIM FOR RELIEF**
**FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE**

75.    Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

76.    Defendants failed to pay Plaintiffs and the Collective Action Members the minimum wages to which they are entitled under the FLSA.

77.    Defendants have engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed in this Class and Collective Action Complaint.

78.    Defendants were required to pay directly to Plaintiffs and the Collective Action Members the full federal minimum wage rate for all hours worked.

79.    Defendants were not eligible to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. §§ 201 *et seq.*, because Defendants failed to inform Plaintiffs and the Collective Action Members of the provisions of subsection 203(m) of the FLSA.

80.    Defendants were further not eligible to avail themselves of the federal tipped minimum wage under the FLSA, 29 U.S.C. §§ 201 *et seq.*, because Defendants required Plaintiffs and the Collective Action Members to perform a substantial amount of non-tipped "side work" in excess of twenty percent (20%) of their time at work. During these periods,

16

Defendants compensated Plaintiffs and the Collective Action Members at the tipped minimum wage rate rather than the full hourly minimum wage rate as required by 29 U.S.C. §§ 201 *et seq.*

81.    As a result of Defendants' violations of the FLSA, Plaintiffs and the Collective Action Members have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

82.    Defendants' unlawful conduct, as described in this Class and Collective Action Complaint, has been willful and intentional. Defendants were aware or should have been aware that the practices described in this Class and Collective Action Complaint were unlawful. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of the Plaintiffs and the Collective Action Members.

83.    Because Defendants' violations of the FLSA have been willful, a three (3) year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

## SECOND CLAIM FOR RELIEF
## FAIR LABOR STANDARDS ACT – UNPAID OVERTIME

84.    Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

85.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiffs and the Class Action Members.

86.    Defendants have failed to pay Plaintiffs and the Collective Action Members at the correct overtime wages for all of the hours they worked in excess of forty (40) hours in a

workweek. Defendants calculated Plaintiffs and the Collective Action Members' overtime rate based on the "tipped minimum wage" which, as stated above, does not apply because Plaintiffs and the Collective Action Members suffered or performed over twenty percent (20%) of their time on non-tipped activities and Defendants failed to notify employees in advance that it would be taking the tip credit pursuant to subsection 203(m) of the FLSA.

87.     As a result of Defendants' violations of the FLSA, Plaintiffs and the Collective Action Members have been deprived of overtime compensation and other wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

88.     Defendants' unlawful conduct, as described in this Class and Collective Action Complaint, has been willful and intentional. Defendants were aware or should have been aware that the practices described in this Class and Collective Action Complaint were unlawful. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the Collective Action Members.

89.     Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

**THIRD CLAIM FOR RELIEF**
**NEW YORK LABOR LAW – UNPAID MINIMUM WAGE**

90.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

91.     At all relevant times, Plaintiffs and Class Members were employed by the Defendants within the meaning of the New York Labor Law, §§2 and 651 and the supporting

New York State Department of Labor regulations.

92.     Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay minimum wage for all hours worked, in violation of the NYLL and regulations promulgated thereunder.

93.     Defendants have engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in the Class and Collective Action Complaint.

94.     The minimum wage provisions of Article 19 of the NYLL and the supporting New York State Department of Labor regulations apply to Defendants, and protect Plaintiffs and the Class Members.

95.     Defendants were required to pay Plaintiffs and Class Members the full minimum wage at a rate of (a) $7.15 per hour for all hours worked from January 1, 2007 through July 23, 2009; (b) $7.25 per hour for all hours worked from July 24, 2009 through December 30, 2013; and (c) $8.00 per hour for all hours worked from December 31, 2013 through the present, under the NYLL §§ 650 *et seq.* and the supporting New York State Department of Labor regulations, including but not limited to the regulations in 12 N.Y.C.R.R. Part 137 and Part 146.

96.     Defendants failed to furnish with every payment of wages to Plaintiffs and the Class Members a statement listing hours worked, rates paid, gross wages, and tip allowances claimed as part of their minimum hourly wage rate, in violation of the NYLL and the supporting New York State Department of Labor regulations, including but not limited to the regulations in 12 N.Y.C.R.R. Part 137 and Part 146.

97.     Defendants failed to provide written notice to Plaintiffs and the Class Members at the time of hire or on February 1 each year which included their: rate of pay, including overtime rate of pay, how the employee is paid, the regular payday, address and phone number of the

employer's main office or principal location and allowances taken as part of the minimum wage (i.e., tip credit).

98.     Defendants required Plaintiffs and the Class Members to perform a substantial amount of non-tipped "side work" in excess of twenty percent (20%) of their time at work. During these periods, Defendants compensated Plaintiffs and the Class Members at the tipped minimum wage rate rather than the full hourly minimum wage rate as required by 12 NY.C.R.R. Part 237 and Park 146.

99.     Through their knowing or intentional failure to pay minimum hourly wages to Plaintiffs and the Class Members, Defendants have willfully violated the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations, including, but not limited to, the regulations in 12 N.Y.C.R.R. Part 137 and Part 146.

100.    Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid minimum wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## FOURTH CLAIM FOR RELIEF
## NEW YORK LABOR LAW – UNPAID OVERTIME

101.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

102.    The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants, and protect Plaintiffs and the Class Members.

103.    Defendants have failed to pay Plaintiffs and the Class Members the proper overtime wages to which they are entitled under the NYLL and the supporting New York State

Department of Labor Regulations.

104.    Defendants failed to pay Plaintiffs and the Class Members one and one-half (1.5) times the full minimum wage rate for hours worked in excess of forty (40) per workweek.

105.    Through their knowing or intentional failure to pay Plaintiffs and the Class Members overtime wages for hours worked in excess of forty (40) per week, Defendants have willfully violated the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor regulations.

106.    Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## FIFTH CLAIM FOR RELIEF
## NEW YORK LABOR LAW – TIME SHAVING

107.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

108.    Defendants knowingly and willfully operated their business with a policy of time-shaving. Defendants failed to compensate Plaintiffs and Class members for all hours worked in violation of NYLL.

## SIXTH CLAIM FOR RELIEF
## NEW YORK LABOR LAW – WAGE NOTICE

109.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

110. Defendants have willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195, in English or in the language identified by Plaintiffs and the Class Members as their primary language, containing Plaintiffs' and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

111. Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants fifty dollars ($50) per employee for each workweek that the violations occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## SEVENTH CLAIM FOR RELIEF
## NEW YORK LABOR LAW – WAGE STATEMENT

112. Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

113. Defendants have willfully failed to supply Plaintiffs and Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone

number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

114.    Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants one hundred dollars ($100) per employee for each workweek that the violations occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## EIGHTH CLAIM FOR RELIEF
## NEW YORK LABOR LAW – UNREIMBURSED BUSINESS EXPENSES

115.    Plaintiffs, on behalf of themselves and the Class Members, repeat, reallege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

116.    Defendants required Plaintiffs and the Class Members to wear a certain uniform when they worked for Defendants, but did not reimburse Plaintiffs or the Class Members for the cleaning of these uniforms.  Accordingly, Defendants are required to compensate Plaintiffs and the Class Members for all business expenses that Defendants required Plaintiffs to incur without reimbursement.

117.    The Defendants' NYLL violations have caused Plaintiffs and Class Members irreparable harm for which there is no adequate remedy at law.

118.    Due to Defendants' NYLL violations, Plaintiffs and the Class Members are entitled to recover damages from Defendants in the amount of Defendants' unreimbursed business expenses for which Plaintiffs and the Class Members incurred, plus liquidiated

damages, damages for unreasonably delayed payment of wages, interest, reasonable attorneys'
fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.* and § 196-d.

### PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective
Action Members and Class Members, respectfully requests that this Court grant the following
relief:

a.  Designation of this action as a collective action on behalf of the Collective Action
    Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. §
    216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them
    of the pendency of this action, permitting them to assert timely FLSA claims in
    this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b)
    and appointing Plaintiffs and their counsel to represent the Collective Action
    Members;

b.  Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a),
    (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiffs and
    their counsel to represent the Class;

c.  An order tolling the statute of limitations;

d.  A declaratory judgment that the practices complained of herein are unlawful
    under the FLSA and the NYLL;

e.  An injunction against Defendants and its officers, agents, successors, employees,
    representatives and any and all persons acting in concert with Defendants, as
    provided by law, from engaging in each of the unlawful practices, policies and
    patterns set forth herein;

f.   An award of compensatory damages as a result of the Defendants' willful failure to pay minimum wage and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.   An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wages and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h.   An award of unpaid compensation due to Defendants' time shaving policy;

i.   An award of compensatory damages due to unpaid uniform maintenance costs under the New York Labor Law;

j.   Designation of Named Plaintiffs as representatives of the Class Members and counsel of record as Class Counsel;

k.   Fifty dollars ($50) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195 occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500) per Plaintiff and each of the Class Members as provided for by NYLL, Aritlce 6 § 198(1)-b.

l.   One hundred dollars ($100) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195 occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500) per Plaintiff and each of the Class Members as provided for by NYLL, Aritlce 6 § 198(1)-d.

m.   An award of prejudgment and post-judgment interest;

n.   An award of costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties; and

o.   Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial

by jury on all questions of fact raised by the complaint.

Dated: New York, New York
February 11, 2014

PELTON & ASSOCIATES PC

By: _____

Brent E. Pelton (BP 1055)
Alison G. Lobban (AL 4955)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs and the putative collective
and class*

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Le Pain Quotidien and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me minimum wage and overtime as required under state and/or federal law, and for making illegal wage deductions, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being named as the representative plaintiff in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

_____     10-22-13     _____
Signature                     Date          Stephan Antonio Ortz
                                            Printed Name

December 27, 2013
Page 6

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Le Pain Quotidien and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me minimum wage and overtime as required under state and/or federal law, and for making illegal wage deductions, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being named as the representative plaintiff in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

_Anthony W Scarsella_   12-27-2013          _Anthony W Scarsella_
Signature                Date                           Printed Name

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Le Pain Quotidien and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchises and/or affiliates to pay me minimum wage and overtime as required under state and/or federal law, and for making illegal wage deductions, and also authorize the filing of this consent to the author(s) challenging such conduct. I authorize being named as the representative plaintiff in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

_____   _____
Signature          Date
10/23/2013

JACQUELYN MAHALICK
_____
Printed Nam